NOT DESIGNATED FOR PUBLICATION

No. 115,119

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHARLES EDWARD WILLIAMS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed June 9, 2017. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before SCHROEDER, P.J., GREEN, J., and BURGESS, S.J.

*Per Curiam*:  Charles Edward Williams appeals from his conviction by a jury and his sentence for unintentional second-degree murder. Williams was originally found guilty of unintentional second-degree murder after a jury trial in 2011. He was granted a downward sentencing departure and sentenced to 240 months' imprisonment. On direct appeal from the 2011 trial, this court reversed Williams' conviction for unintentional second-degree murder and remanded for a new trial because the trial court had erred in failing to give a self-defense instruction that Williams had requested.

1

On remand, Williams was again found guilty of unintentional second-degree murder. He requested a downward sentencing departure, but the sentencing court denied his request and imposed the standard 438-month presumptive prison sentence under the Kansas Sentencing Guidelines Act (KSGA). Williams now appeals his conviction and sentence, arguing (1) that his statutory speedy trial rights were violated in the original 2011 jury trial and (2) that the court imposed a vindictive sentence after he was convicted of unintentional second-degree murder on remand in 2015. Finding neither of his arguments persuasive, we affirm Williams' conviction and sentence for unintentional second-degree murder.

On August 5, 2010, Charles Edward Williams was charged with one count of unintentional second-degree murder and one count of aggravated reckless battery causing great bodily harm. The State later amended the complaint or information and replaced the count of unintentional second-degree murder with one count of intentional second-degree murder. The charges were brought after Williams was involved in a fight with his adult stepson. The fight occurred because Williams did not want his stepson in his house. Before the fight, Williams got a filet knife from his fishing tackle box. Williams asked his stepson to leave his house several times. Williams' wife, the mother of the stepson, tried to break up the fight, but she was unsuccessful. As a result of her efforts, she received cuts on her face from Williams' filet knife. In the course of the fight, Williams stabbed his stepson. His stepson later died as a result of a stab wound to the chest.

On October 15, 2010, the trial court held a preliminary hearing on the matter. At the conclusion of the preliminary hearing, Williams waived arraignment and entered a plea of not guilty. A jury trial was set for December 6, 2010. That same date, Williams was granted a continuance to February 28, 2011. No record was taken relating to the continuance. On February 28, 2011, Williams was granted another continuance to March 14, 2011. No record was taken. On March 14, 2011, Williams was granted a continuance to May 23, 2011. No record was taken. On May 10, 2011, the State was granted a

continuance to May 31, 2011. No record was taken. On May 31, 2011, Williams was granted a continuance to July 25, 2011. No record was taken. Also on May 31, 2011, the State was granted a continuance on the July 25, 2011, jury trial, which was then set for August 1, 2011. No record was taken for either continuance.

On August 1, 2011, the jury trial began. The Honorable Eric A. Commer presided over the trial. Pertaining to Count 1, the jury was instructed that it could find Williams guilty of intentional murder in the second degree; unintentional murder in the second degree; voluntary manslaughter; involuntary manslaughter; or not guilty. As for Count 2, the jury was instructed that it could find Williams guilty of aggravated battery (great bodily harm); aggravated battery (bodily harm); or not guilty. On August 5, 2011, the jury returned its verdict. Williams was found guilty of unintentional murder in the second degree and aggravated battery—bodily harm. The trial court departed from the presumptive sentence under the KSGA and imposed a prison sentence of 240 months with 36 months of postrelease supervision. The presumptive prison sentence under the sentencing guidelines actually ranged from 416 months for the mitigated sentence to 438 months for the standard sentence to 460 months for the aggravated sentence.

Williams appealed his conviction to this court. See *State v. Williams*, No. 107,366, 2014 WL 274455 (Kan. App. 2014) (unpublished opinion). On appeal, this court affirmed Williams' conviction for aggravated battery and reversed his conviction for unintentional second-degree murder holding that the trial court erred in denying Williams' request for a self-defense jury instruction. As a result, this court remanded the case for a new trial on the offense of unintentional second-degree murder with the following directions: "to instruct the jury on that offense and any lesser degree of that offense that may apply based on the evidence presented at trial." 2014 WL 274455, at *1.

On April 20, 2015, a second jury trial began. The Honorable David Kaufman presided over the proceedings. The trial court instructed the jury that it could find

3

Williams guilty of unintentional second-degree murder; voluntary manslaughter; involuntary manslaughter; or not guilty. The trial court also instructed the jury on Williams' claim of self-defense. On April 24, 2015, the jury returned its verdict finding Williams guilty of unintentional second-degree murder.

Williams moved for violation of his speedy trial rights concerning his 2011 jury trial. In the motion, Williams claimed that his trial counsel from his first jury trial had caused his case to be continued without his acknowledgment or acceptance. He also claimed that the State was complicit in the violation of his speedy trial rights by failing to have him present in the courtroom for the continuances and failing to provide him with the opportunity to oppose them. Williams asserted that 260 days had passed between his arraignment and when he was brought to trial.

The trial court took up posttrial motions and sentencing. At that hearing, Williams argued a motion to proceed pro se and have standby counsel. The trial court refused to appoint standby counsel but did find that Williams had made a knowing and intelligent waiver of his right to counsel. Accordingly, Williams was allowed to proceed pro se. The trial court then addressed Williams' motion alleging a violation of his speedy trial rights. The court found that it was procedurally improper to reach the merits of this argument. As a result, the court denied Williams' motion concerning the violation of his speedy trial rights. The court then considered and denied his motions for judgment of acquittal and a new trial.

The trial court proceeded to sentencing. Williams' trial counsel had filed a notice of objection to Williams' criminal history and a motion for downward dispositional or durational departure. The court overruled Williams' objection to his criminal history and determined that he had a criminal history score of "B." Next, the court considered Williams' motion for a departure sentence. Williams argued that his age, 59, should be a mitigating factor. He also asserted that he was not the initial aggressor in the fight.

4

Additionally, he argued as mitigating factors that his prior person felonies were 35 years old and that the victim's mother did not wish for him to have a lengthy sentence. Finally, he noted that the previous sentencing court had departed to a sentence of 240 months. The State argued that the standard presumptive sentence was proper because "[the victim] was in fear for his life and then was injured and then contemplated his death. . . . And he told his mother, I am going to die today, and he was right." The trial court "respectfully decline[d] to grant the motion for dispositional or durational departure." The trial judge noted that he was not required by Kansas law to justify the imposition of a presumptive sentence, and so he declined to do so. Still, the judge asserted that the record would unequivocally show that he had "carefully considered all matters previously stated."

Williams was given the standard presumptive prison sentence under the KSGA—438 months.

*Did the Trial Court Err in Declining to Reach the Merits of Williams' Motion Relating to His Speedy Trial Rights?*

"Whether the State violated a defendant's statutory right to a speedy trial is a question of law subject to de novo review." *State v. Sievers*, 299 Kan. 305, 307, 323 P.3d 170 (2014).

On appeal, Williams argues that the trial court erred in declining to address the merits of his motion asserting that his statutory speedy trial rights had been violated in relation to his first jury trial in 2011. To better understand Williams' argument, we must first understand why the trial court denied the motion. In denying Williams' motion alleging a violation of speedy trial rights, the trial judge stated:

> "The motion is denied, but this is why it's denied: I decline to reach the merits of
> Mr. Williams' argument. Let's make sure we understand the context of the argument. This

5

issue being raised by Mr. Williams on a purported speedy trial violation, that is something that Mr. Williams is alleging occurred throughout the course of litigation leading up to his conviction on trial number one, which, for the record, was in front of Judge Commer. To the extent that that issue had any merit, that was one to be raised on the direct appeal from that first trial conviction. Regardless of what issues were raised or not raised on the first direct appeal from [that] trial number 1 conviction, there was a remand of Mr. Williams' conviction on the homicide, and that resulted in trial number 2 occurring before me. What Mr. Williams is asking me to do now is that as he sits there today convicted of homicide in trial number 2 in the calendar year 2015, I'm being asked to do this, go back in time, jump over the previous appellate court decisions, jump over the previous trial conviction in trial number 1 and litigate that issue of speedy trial. That's not allowed under the law. It's simply not, and I don't reach the merits of it. There could be potentially other avenues on how that's addressed, but in terms of this procedural posture, no, that's overruled. I don't address the merits of it and decline to make any factual findings. So respectfully that motion is overruled for that reason, and certainly if there's appellate review of this motion for speedy trial it was well written, well thought out. I don't express any opinion on the merits of it because I decline to reach it. I don't have to do that, and I'm not going to. In fact, if I did I think it's an illegal ruling by me anyways."

The State echoes the trial judge, arguing that Williams' claim does not have merit. The State asserts that because Williams' first conviction was reversed and a retrial was ordered, he cannot "argue errors related to a conviction that no longer exists." The State also argues that even if we find that Williams' claim can be entertained, it fails under K.S.A. 2016 Supp. 22-3402(g) and the holdings from *State v. Dupree*, 304 Kan. 43, 371 P.3d 862 (2016), and *State v. Brownlee*, 302 Kan. 491, 354 P.3d 525 (2015).

Williams equates the trial court's findings with the doctrine of res judicata, or claim preclusion. Moreover, we note that this is essentially the State's sole argument. For example, the State contends that the speedy trial issue should have been litigated earlier and was not. As a result, it should be deemed waived.

6

"The doctrine of res judicata provides that 'where an appeal is taken from the sentence imposed and/or a conviction, the judgment of the reviewing court is res judicata as to all issues actually raised, and those issues that could have been presented, but were not presented, are deemed waived.'" *State v. Kingsley*, 299 Kan. 896, 901, 326 P.3d 1083 (2014) (quoting *State v. Neer*, 247 Kan. 137, 140-41, 795 P.2d 362 [1990]). Res judicata has four elements: "(1) same claim; (2) same parties; (3) claims were or could have been raised; and (4) a final judgment on the merits." *State v. Martin*, 294 Kan. 638, 641, 279 P.3d 704 (2012) (quoting *Winston v. Kansas Dept. of SRS*, 274 Kan. 396, 413, 49 P.3d 1274, *cert. denied* 537 U.S. 1088 [2002]). The third element of res judicata is closely tied with the long-accepted rule that issues not raised before the trial court cannot be raised on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Certainly that rule would also apply under the current procedural posture, where Williams is even further removed from the failure to raise the issue—now on his second appeal.

Here, Williams claims that his statutory speedy trial rights were violated during his first jury trial which was held in 2011. But he did not raise his claim during the pendency of the first jury trial. He also did not raise this claim on direct appeal from his first jury trial. He also failed to raise this claim during the pendency of his second jury trial, after his conviction from the first jury trial was reversed and remanded for retrial. Williams finally raised this claim that his statutory speedy trial rights were violated in a pro se posttrial motion on May 13, 2015, after his second jury trial. It would seem that each element of res judicata has been met and that Williams has waived his speedy trial argument as it relates to his first jury trial.

But Williams argues that *State v. Cady*, 254 Kan. 393, 867 P.2d 270 (1994), provides that his speedy trial claim has not been waived and should have been addressed by the trial court. In *Cady*, the defendant's conviction for first-degree murder was reversed on appeal because of prosecutorial misconduct. On remand, the defendant was once again convicted of first-degree murder. On appeal from his second conviction, the

7

defendant claimed that the trial court erred when it admitted his videotaped confession, which aided the State in obtaining a guilty verdict. The court noted that the confession had also been admitted in the defendant's first trial, but its admissibility was not challenged in his first appeal. The State argued "that after a remand issues not raised in the initial appeal are waived in any subsequent appeals." *Cady*, 254 Kan. at 400. In making its argument, the State relied on *State v. Neer*, 247 Kan. 137, 795 P.2d 362 (1990). The court found, contrary to the State's assertion, that "*Neer* does not state that failure to raise an issue in the first trial or on appeal bars raising the same issue *that also arises in a subsequent trial*." (Emphasis added.) *Cady*, 254 Kan. at 402. The court then held that under the circumstances of *Cady*, the issue of whether the videotaped confession was properly admitted could be considered for the first time on appeal from the second conviction. *Cady*, 254 Kan. at 402.

Here, Williams' situation can be distinguished from the defendant's in *Cady*. First, we note that K.S.A. 2016 Supp. 22-3402(f) states that

> "[I]n the event . . . a conviction is reversed on appeal to the supreme court or court of appeals, the time limitations provided for herein shall commence to run from . . . the date a new trial is ordered or the date the mandate of the supreme court or court of appeals is filed in the district court."

This provision shows that Williams' statutory speedy trial claim could not have been "the same issue that also arises in a subsequent trial" because his speedy trial clock had reset after his conviction was reversed on appeal from his first jury trial. Thus, the State is correct that "[u]nlike *Cady*, [Williams] is not attempting to raise an issue that arose in the subsequent trial." Accordingly, *Cady* is not persuasive and Williams' claim is still precluded by the doctrine of res judicata—as it was waived when he failed to bring it before.

8

Moreover, even if we were to find that the trial court should have entertained Williams' argument, it would be of no consequence. The State points out, and Williams acknowledges, that K.S.A. 2016 Supp. 22-3402(g) and the holdings from *State v. Dupree*, 304 Kan. 43, 371 P.3d 862 (2016), and *State v. Brownlee*, 302 Kan. 491, 354 P.3d 525 (2015), may prove fatal to his speedy trial claim.

K.S.A. 22-3402(g) was amended in 2012 to read:

"If a defendant, or defendant's attorney in consultation with the defendant, requests a delay and such delay is granted, the delay shall be charged to the defendant regardless of the reasons for making the request, *unless there is prosecutorial misconduct related to such delay*. If a delay is initially attributed to the defendant, but is subsequently charged to the state for any reason, such delay shall not be considered against the state under subsections (a), (b) or (c) and shall not be used as a ground for dismissing a case or for reversing a conviction *unless not considering such delay would result in a violation of the constitutional right to a speedy trial or there is prosecutorial misconduct related to such delay*." (Emphasis added.) L. 2012, ch. 157, § 4.

In *Dupree*, our Supreme Court held that K.S.A. 2012 Supp. 22-3402(g) is a procedural provision that applies retroactively. See *Dupree*, 304 Kan. at 57; see also *Brownlee*, 302 Kan. at 509-10. Thus, K.S.A. 2016 Supp. 22-3402(g) in its current form would apply to Williams' speedy trial claim.

Here, Williams has not argued that his constitutional right to a speedy trial has been violated or that the delay in bringing him to trial in 2011 was the result of prosecutorial misconduct. Williams was arraigned on October 15, 2010. His jury trial was originally set for December 6, 2010. The case was later continued four times by Williams and twice by the State, with the jury trial finally beginning on August 1, 2011. There is no doubt that Williams was not brought to trial within 90 days of his arraignment as required by 2016 Supp. K.S.A. 22-3402(a). Even so, because he has failed to show that

9

his constitutional right to a speedy trial was violated or that the delay was the result of prosecutorial misconduct, and because K.S.A. 2016 Supp. 22-3402(g) applies retroactively, his claim fails.

Williams concedes that this court is duty bound to follow our Supreme Court's precedent, absent an indication that the Supreme Court is departing from its previously held position. See *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). Still, he argues that K.S.A. 2016 Supp. 22-3402(g) cannot be applied retroactively because doing so in his situation violates the United States Constitution's prohibition against ex post facto laws. He specifically argues that "[b]ecause the statutory time period to bring him to trial had expired before [the effective date of the 2012 amendments], he was not liable for punishment for that crime and the *Ex Post Facto* clause prevented the legislature from stretching its speedy trial net back in time to prohibit relief." We acknowledge that Williams advances this argument; however, we decline to address it. Our Supreme Court's holdings from *Dupree* and *Brownlee* are clear, and we are required to follow them.

In conclusion, Williams has failed to show that the trial court erred in denying his motion for speedy trial violation after declining to reach the merits of the argument. Williams waived his speedy trial claim under the doctrine of res judicata when he failed to argue it during the pendency of his first jury trial in 2011 or on direct appeal from his first jury trial. Moreover, once his conviction was reversed on direct appeal from that trial, his speedy trial clock was reset under K.S.A. 2016 Supp. 22-3204(f). Thus, his speedy trial claim from his first jury trial was not an issue in his later jury trial on remand. Finally, Williams' claim fails under retroactive application of K.S.A. 2016 Supp. 22-3402(g), because he has neglected to show the delay was the result of prosecutorial misconduct or resulted in a violation of his constitutional right to a speedy trial. For those reasons, Williams' arguments prove unpersuasive. Accordingly, we affirm the trial court's denial of Williams' motion for speedy trial rights violation.

*Did the Trial Court Impose a Vindictive Sentence?*

After his conviction in 2011, Williams' motion for downward durational sentence departure was granted, and he was sentenced to 240 months' imprisonment. The presumptive prison sentence under the sentencing guidelines ranged from 416 to 438 to 460 months. The sentencing court found the following substantial and compelling reasons to grant Williams' motion for downward durational departure: (1) his prior person felonies were over 30 years old; (2) if his prior person felonies were disregarded he would have a sentencing range of 165, 174, or 184 months; (3) had he been convicted of voluntary manslaughter, he would have had a sentencing range of 206, 216, or 228 months; (4) if the standard sentence was imposed, he would not be eligible for release for 36.5 years, even though he would have been eligible for release in 25 years had he been convicted of first-degree premeditated murder; and (5) he was 55 years old when the charges were filed.

After his conviction in 2015, Williams' motion for downward departure was denied, and he was sentenced to 438 months—which represented the standard sentence for presumptive prison time under the sentencing guidelines. Williams argues that because the sentencing judge in 2015 "did not state any reason for this substantial increase, the new sentence is *presumed vindictive* and should be reversed."

First, we must briefly address the State's argument as it relates to K.S.A. 2016 Supp. 21-6820(c)(1). The State argues, based on this statute, that we lack jurisdiction to entertain Williams' argument, because the sentence he received after his conviction on remand was the standard presumptive prison sentence under the sentencing guidelines.

K.S.A. 2016 Supp. 21-6820(c)(1) prohibits an appellate court from reviewing a defendant's sentence for a felony conviction when that sentence "is within the presumptive sentence for the crime." See *State v. Sprung*, 294 Kan. 300, 317, 277 P.3d

11

1100 (2012) (Appellate courts lack jurisdiction to review challenges to presumptive sentences.). Williams acknowledges K.S.A. 2016 Supp. 21-6820(c)'s prohibition and also acknowledges that he was given the standard presumptive prison sentence for his 2015 conviction of unintentional second-degree murder. This would appear to end our analysis. But Williams does not concede that this court lacks jurisdiction. Instead, he argues that his sentence cannot be classified as a presumptive sentence because its increase made it so that it is presumptively vindictive and violates due process.

In *North Carolina v. Pearce*, 395 U.S. 711, 725-26, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989), the United States Supreme Court held that due process prohibits an individual being resentenced from having his or her sentence increased if the increase is actually motivated by vindictive retaliation. Similarly, and in reliance on *Pearce*, our Supreme Court has held that when resentencing results in a seemingly unjustified enhancement of an individual's sentence, there is a *presumption* that the new sentence is the result of vindictiveness. See *State v. Walker*, 283 Kan. 587, 616, 153 P.3d 1257 (2007) (citing *State v. Rinck*, 260 Kan. 634, 640-41, 923 P.2d 67 [1996]).

But "[a] criminal sentence that is within statutory limits will not be disturbed on appeal absent a showing of abuse of discretion or vindictiveness on the part of the sentencing court." *State v. Cooper*, 275 Kan. 823, 827, 69 P.3d 559 (2003) (citing *State v. Rice*, 227 Kan. 416, 424, 607 P.2d 489 [1980]). "In all cases where the presumption of vindictiveness does not apply, the defendant must affirmatively prove actual vindictiveness in order to obtain relief. However, where the presumption applies, the sentencing judge or the prosecutor must rebut the presumption that an increased sentence or charge resulted from vindictiveness." *Rinck*, 260 Kan. 634, ¶ 3.

Williams specifically argues that "the sentence, although . . . within the appropriate grid box, was not a presumptive sentence." He asserts that "if a defendant has

been given a particular sentence, the Due Process Clause requires any subsequent increase in that sentence to be justified and explicitly explained on the record [because] [t]he increased sentence has, at that point, lost its presumptive correctness and no longer enjoys the protections of K.S.A. 21-[6820]." Thus, Williams argues that his 2015 sentence is presumptively vindictive because the trial court did not explain why it was imposing the standard sentence under the sentencing guidelines instead of resentencing him to the 240-month sentence it had imposed in 2011.

Here, there is no dispute that Williams' sentence was increased from 240 months after his first jury trial conviction to 438 months after his second jury trial conviction. He was sentenced for the same crime each time. Even so, we must remember that Williams was granted a significant departure from the sentencing guidelines after his first jury trial conviction. After his conviction on remand, he was resentenced to the standard presumptive prison term under the sentencing guidelines—his motion for departure sentencing was denied.

Williams' situation presents us with an apparent juxtaposition of applicable law. We no doubt recognize K.S.A. 2016 Supp. 21-6820(c)(1)'s clear and unambiguous prohibition on appellate review of presumptive prison sentences. But we also cannot ignore *Rinck's* command that a judge increasing an individual's sentence on remand or at resentencing must affirmatively put the reasons for the increase on the record.

Even so, the rule from *Cooper*—that "[a] criminal sentence that is within statutory limits will not be disturbed on appeal absent a showing of abuse of discretion or vindictiveness on the part of the sentencing court"—provides us with some clarification as it implies that even a sentence that falls within the sentencing guidelines may be challenged for vindictiveness, but the burden of proof will be on the challenger. See *Cooper*, 275 Kan. at 827. Moreover, it is difficult for us to say that imposing the presumptive sentence for a crime of conviction would result in a "seemingly *unjustified*

enhancement" of an individual's sentence and therefore a presumption of vindictiveness. (Emphasis added.) *Walker*, 283 Kan. at 616. A presumptive prison sentence under the sentencing guidelines is statutorily justified as the sentence for the specific crime of conviction—that is precisely what makes it presumptive. That is why we cannot say that the imposition of a presumptive sentence on remand or at resentencing, though it may increase an individual's sentence, is an *unjustified* enhancement that gives rise to a presumption of vindictiveness. Instead, that vindictiveness must be proven by the challenger.

Additionally, Williams could challenge his sentence by arguing that the sentencing judge abused his discretion. See *Cooper*, 275 Kan. at 827. Williams does not advance such an argument. But even if he had, the argument would likewise fail. After his 2011 conviction, Williams' motion for a downward durational departure was granted by Judge Commer. After his 2015 conviction, Williams' motion for a downward durational departure was denied by Judge Kaufman. In denying Williams' motion for departure sentencing, Judge Kaufman stated:

> "I've carefully reviewed the motion for dispositional and durational departure. I've carefully listened to all statements of counsel here in court this morning. I've carefully reviewed my notes from the trial. I've carefully reviewed all contents of the court file. I respectfully decline to grant the motion for dispositional or durational departure."

Therefore, we cannot say, nor could Williams show, that Judge Kaufman abused his discretion in imposing the presumptive prison sentence. Instead, Judge Kaufman properly exercised his discretion in denying Williams' motion for a downward sentence departure. For those reasons, Williams' would not have been successful if he had challenged his sentence under an abuse of discretion standard.

Thus, because Williams' entire argument is based on a presumption of vindictiveness and on the fact that the sentencing judge here did not rebut such a presumption, his argument fails. For clarification, the argument does not fail because we do not have jurisdiction to hear it; the argument fails because Williams has not met his burden of showing that the imposition of the presumptive prison sentence on remand was actually vindictive or an abuse of discretion. For those reasons, we affirm the trial court's sentence.

Affirmed.